Carlon BASSETT *v.* HOBART CORPORATION

87-73                                                    732 S.W.2d 133

Supreme Court of Arkansas
Opinion delivered July 6, 1987

*F. H. Martin*, for appellant.

*Kincaid, Horne & Trumbo*, by: *Bass Trumbo*, for appellee.

DARRELL HICKMAN, Justice. This case was referred to us by the court of appeals because it involves the tort of conversion. The trial judge, sitting as a jury, decided that the appellant, Carlon Bassett, sold some restaurant equipment which he had no right to do. His father, Johnny Bassett, had guaranteed payment for the equipment, which was repossessed by McIlroy Bank and Trust Company and given to him as guarantor. His father died, and the appellant disposed of the property. The judge found that the appellant did not have title to the goods and did not demonstrate he had any right to sell the property; he was not administrator or executor of his father's estate; he could not prove he had authority to act for a trust which he claimed authorized him to sell the equipment; and he could not produce a valid assignment of the bank's interest in the property. The appellee, a foreign corporation, which sold the equipment originally to Sam Harrison, d/b/a End of the Rainbow, a restaurant, took a security interest in the equipment but did not perfect it by properly filing a financing statement. However, the court held that the appellee had met the burden of proof regarding conversion against the son, Carlon Bassett, who could not demonstrate a legal right to the property. A judgment of $5,500 was entered against the appellant, and we affirm.

■ On appeal two issues are raised. First, it is argued that the trial court wrongfully failed to apply one section of the Wingo Act, Ark. Stat. Ann. § 64-1202 (Repl. 1980), which provides in part that a foreign corporation which fails to register to do business in Arkansas cannot enforce a contract made in this state.

It is undisputed that the appellee was a foreign corporation, had failed to register in Arkansas, and was doing business in Arkansas. But the contract provided that it had to be accepted in Ohio. The trial court held the contract to be an Ohio contract, relying on the case of *Hough* v. *Continental Leasing Corp.*, 275 Ark. 340, 630 S.W.2d 19 (1982), where we said:

> . . . The trial court was correct in finding that the contract was made in Mississippi, where the final acceptance occurred. . .

> . . .'The rule is stated in Leflar's *American Conflicts Law* (1969), § 144 at page 353:

>> "The authorities are reasonably clear that, in this event, the contract is made at the time and place 'where the last act necessary to the completion of the contract was done—that is, where the contract first creates a legal obligation.' "

■■ The appellant argues that the final act was not acceptance in Ohio but was a payment to be made by the buyer when the merchandise was delivered in Arkansas to him, a condition precedent to formation of the contract, according to the appellant. The trial court made a finding, and we cannot reverse it unless it is clearly wrong. ARCP 52. In this case we cannot say it was clearly wrong in finding this contract to be an Ohio contract, so the Wingo Act cannot bar the appellee's claim.

The second argument is essentially that provisions of the Uniform Commercial Code dictate that the appellee cannot prevail. Specifically, the appellant cites Ark. Stat. Ann. § 85-9-302 (2) (Supp. 1985) and comment 5 to Ark. Stat. Ann. § 85-3-415 (Add. 1961), which deal with assignment and subrogation. The argument is that the bank which held a valid security interest in the property, and properly repossessed it, assigned its rights to the appellant's father, who was a guarantor on the note to the

bank, or the appellant's father was, at least, subrogated to the bank's rights. Therefore, the sale was proper because these rights were superior to the unsecured rights of the appellee.

■ This argument must fail because the appellant did not prove he had these rights—he was the son, not the father. The trial court made these remarks and these findings:

> . . . Mr. Bassett claims he was entitled as a family member to sell, because Johnny Bassett was a Guarantor of the obligation of Rainbow Enterprises, Incorporated, to McIlroy Bank and Trust, and that the security agreement in favor of McIlroy Bank and Trust was filed on December 9, 1982, prior to the filing by the Plaintiff [Hobart]. Assuming that all this is true, . . . he did not act as a personal representative of the estate of Johnny Bassett; he hadn't been appointed. Reference is made to the Johnny Bassett Trust, and it is argued that Mr. Carlon Bassett was authorized to act on behalf of the Trust. The testimony of the Trust was that it was created by written instrument, and as the Trust was not produced, evidence was excluded by the Court as to the nature and provisions of the Trust. The written instrument would be the best evidence on the question, and would also be the best evidence on any right of Mr. Bassett to act as a Trust representative. To put it plainly, Mr. Bassett was in the position of a family member acting summarily, but unofficially, be it in good faith. It is also in evidence that the money obtained from the sale of this equipment, part of which the plaintiff had a security interest in, was used to pay the obligation of the late Mr. Bassett in Texas. It is suggested that some of this eventually came back to McIlroy Bank, but, once again, McIlroy Bank is not a party to this lawsuit. To urge that McIlroy Bank had rights under its security agreement that were superior to those of the plaintiff, but McIlroy Bank is not a party, and it cannot informally transfer its rights to Carlon Bassett . . . Now, the plaintiff did neglect to file its security agreement until McIlroy had filed its security agreement, but McIlroy is not a party of interest in this case, and Bassett cannot claim under the matter of the McIlroy security agreement. It has been argued by learned counsel that, oh, Johnny Bassett was a guarantor, and he

596

stood in the shoes of the McIlroy Bank. Maybe so. But, Johnny Bassett's position and mantle cannot descend automatically on Mr. Carlon Bassett unless Carlon Bassett had been duly appointed and qualified as the personal representative of the estate of Johnny Bassett, deceased . . . .

On appeal all evidence is viewed in a light most favorable to the appellee. *Looper* v. *Madison Guaranty Savings & Loan Ass'n.*, 292 Ark. 225, 729 S.W.2d 156 (1987). The appellant must demonstrate prejudicial error was committed to obtain a reversal of a judgment. *McNair* v. *Ozark Gas Transmission System*, 292 Ark. 235, 729 S.W.2d 165 (1987). This case was tried to the judge who made findings which we cannot say were clearly wrong. ARCP 52. The appellee made a *prima facie* case, and the appellant was unable to demonstrate he had any right to the property. The appellant has been unable to demonstrate the trial judge was clearly wrong in his findings. Therefore, the judgment is affirmed.

Affirmed.

NEWBERN, J., not participating.