CITY OF POCAHONTAS *v.* Lee HUDDLESTON, et al.

91-353                                        831 S.W.2d 138

Supreme Court of Arkansas
Opinion delivered May 11, 1992

*Throesch and Throesch*, by: *John Throesch*, for appellant.

*Dick Jarboe*, for appellee.

ROBERT L. BROWN, Justice. This case involves a dispute over the payment of regular salaries and holiday compensation to law enforcement officers. The appellees are employees of the Pocahontas Police Department and include patrolmen, radio operators and dispatchers, and jailers. The City of Pocahontas is the appellant. At issue is whether the City violated state law when it reduced regular salaries in 1985 in order to begin paying holiday compensation in one lump sum. Secondary issues are raised about 1) whether all of the appellees are law enforcement officers, 2) the applicable statute of limitations, and 3) a counterclaim by the City for repayment of mistaken salary payments in 1988. We affirm the circuit court on the decision that the City violated state law when it reduced regular salaries in order to make lump-sum holiday payments. We further hold that the circuit court was correct in denying the counterclaim and in applying a three-year limitations period. We reverse the circuit court on the finding of which employees are affected under state law.

On January 26, 1985, the appellees, who are employees of the Pocahontas Police Department, signed statements that they desired to receive their holiday pay in one payment in December of each year rather than having it spread over the entire year. From 1980 to 1985, the appellees had had their holiday pay prorated over fifty-two weeks and added to their weekly salary payments. The City Council agreed to the lump-sum payment at its regular meeting on February 12, 1985. In implementing the change, the City first reduced the weekly salary payments of the appellees and used that savings to make the holiday payment.

This came to a head when certain employees were given a ten-dollar-per-week raise but realized only nine dollars a week with the additional one dollar being held for holiday compensation. On March 31, 1989, the appellees filed suit against the City for declaratory relief and alleged that the City had violated state law by not paying holiday pay *in addition* to regular pay.

The City answered, denying liability, and pled a three-year statute of limitations for oral obligations as an affirmative defense. The City further counterclaimed that the appellees were overpaid for four years and that the City was entitled to reimbursement of these overpayments. This was denied by the appellees. On November 8, 1989, a bench trial was held before the circuit court. On May 31, 1990, the circuit court entered judgment denying the City's counterclaim. It further applied a three-year limitations period and found that the appellees who were radio dispatcher/jailers were law enforcement officers entitled to holiday pay in addition to their regular salary.

## I. HOLIDAY COMPENSATION

Act 252 of 1985, which was codified as Ark. Code Ann. § 14-52-105 (1987), provided as follows regarding holiday compenation for municipal police departments:

(a)   All law enforcement officers regardless of their titles, such as city marshal, employed by cities of the first or second class or incorporated towns shall be compensated for all legal holidays established by the governing body of the municipality.

(b)   This compensation shall be based on the law enforcement officer's daily rate of pay and in addition to the regular pay schedule.

(c)   This compensation may be included within the officer's base pay.

(d)   This compensation shall be prorated and paid during the regular payroll periods.

This Act went into effect on March 4, 1985.[1] The City changed its

---

[1] Two years later Act 501 of 1987 amended subsection 14-52-105(d) to add that the

holiday payment plan to a one-time payment a month earlier that year on February 12, 1985. There is no dispute that the appellees have received a lump-sum payment as holiday compensation since 1985. There is also no argument that, in implementing the new payment plan in 1985, the City reduced weekly salaries to compensate for the holiday payment.

The crucial issue in this case is whether reduction of weekly salaries commencing in 1985 for the holiday lump-sum payments constituted holiday compensation "in addition to the regular pay schedule" as section 14-52-105 requires. The appellees argue that the weekly payments from 1980 to 1985 were regular pay and that reducing weekly pay in 1985 violated the statute. The City on the other hand maintains that it spread holiday compensation over fifty-two payments, beginning in 1980, and that converting to a lump-sum payment in 1985 and reducing weekly pay to compensate for that payment did not constitute a reduction in the regular pay schedule.

There was testimony at trial from several witnesses, including patrolman Bob Smith, criminal investigator Diane Thielemier, and retired officer Don Garrett, that the weekly increases which began in 1980 were considered to be raises and their regular pay. The City Treasurer, Elizabeth Penn, however, was adamant that the increased salaries for the appellees beginning in 1980 included holiday compensation and were not pay raises. The issue then is whether the circuit court's finding that the City did not pay the appellees holiday pay in addition to their regular salary for three years as required by § 14-52-105 was error. We hold that it was not.

██ Our law on this point is clear:

When a case is tried by a circuit court sitting without a jury, our inquiry on appeal is not whether there is substantial evidence to support the factual findings of the court, but whether the findings are clearly erroneous (clearly against the preponderance of the evidence). *Bassett* v. *Hobart Corp.*, 292 Ark. 592, 732 S.W.2d 133 (1987). *See*

compensation might be paid, alternatively, in a lump sum in December of each year. Ark. Code Ann. § 14-52-105(d) (Supp. 1991).

*also Superior Improvement Co.* v. *Mastic Corp.*, 270 Ark. 471, 604 S.W.2d 950 (1980). In reviewing a finding of fact by a trial court, we consider the evidence and all reasonable inferences therefrom in a light most favorable to the appellee. *McCartney* v. *McLaughlin*, 296 Ark. 344, 756 S.W.2d 907 (1988).

*Jernigan* v. *Cash*, 298 Ark. 347, 349, 767 S.W.2d 517 (1989). There was certainly testimony at trial that by 1985, the weekly pay to the appellees was considered by them to be their regular pay. Admittedly, there was also contradictory testimony from the City Treasurer. Nevertheless, we cannot say that the circuit court's finding was clearly erroneous, and we, therefore, affirm its decision on this point.

## II. LAW ENFORCEMENT OFFICERS

The City next contends that the circuit court's finding that radio operators, dispatchers, and jailers were law enforcement officers and entitled to holiday compensation was clearly erroneous. We turn, first, to various statutes affecting and concerning law enforcement officers.

■ The General Assembly finds and determines:

. . . .

(3)   That it is in the public interest that minimum levels of education and training be developed and made available to persons seeking to become law enforcement officers and to persons presently serving as law enforcement officers.

Ark. Code Ann. § 12-9-101(3) (1987).

(1)   "Law enforcement officer" means any appointed law enforcement officer who is responsible for the prevention and detection of crime and the enforcement of the criminal, traffic, or highway laws of this state. . . .

Ark. Code Ann. § 12-9-102(1) (1987).

(a)(1)   The Arkansas Commission on Law Enforcement Standards and Training shall provide, by regulation, that no person shall be appointed as a law enforcement officer, except on a temporary basis not to exceed one (1)

year, unless the person has satisfactorily completed a preparatory program of police training at a school approved by the commission.

Ark. Code Ann. § 12-9-106(a)(1) (1987). The Chief of Police at Pocahontas, Charlie Meridith, testified that the appellees who were radio dispatcher/jailers were not responsible for the investigation, prevention, or detection of crime and did not "write" any criminal or traffic violations. He testified that these appellees had been employed for at least one year but had no plans to attend the Law Enforcement Academy for police training. The appellees counter that wearing uniforms and badges is enough to qualify as law enforcement officers. We disagree. The mere fact that these employees were uniformed and wore badges did not automatically convert them into law enforcement officers as defined by statute. *Cf. Pipes v. State*, 22 Ark. 235, 738 S.W.2d 423 (1987). We hold that the circuit court clearly erred in finding that the radio dispatcher/jailers were entitled to holiday pay, and we reverse on this point.

## III. COUNTERCLAIM FOR OVERPAYMENT

The City counterclaimed and contended that the appellees were overpaid in 1985, 1986, 1987, and 1988, stating:

> Through a clerical error, the weekly pay of the plaintiffs was not reduced by the appropriate percentage that was holiday pay and they continued to receive their regular rates of pay, which included holiday pay. Then, in December of 1985, 1986, 1987 and 1988, some of the plaintiffs were paid holiday pay for which they had already been compensated.

The counterclaim was generally denied by the appellees.

In support of the City's claim, the City Treasurer testified that all of the appellees were paid erroneously for an extra week in 1988 for a total of fifty-three weeks, and she thought this had also happened in 1986. She testified about one employee who was overpaid in 1988 — Don Garrett — and the amount of that overpayment which was $238. No testimony was presented regarding the other appellees. Nor do we know from her testimony precisely when this occurred in 1988, whether it occurred in other years, or how the alleged mistake was made. We do know

the City never requested that any overpayment be paid back until it filed its counterclaim in 1989. The appellees presented no proof on this issue.

■ We can readily understand from our review how the circuit court may have found the City's minimal proof confusing and inexact on the counterclaim. Indeed, the Treasurer's testimony about an extra week's pay in 1988 is different from the allegation in the City's counterclaim that some appellees were paid holiday pay twice over four years. Except for a sweeping statement by the Treasurer about a mistake made in 1988 and one example, the record is bereft of testimony supporting the allegation of overpayment for four years. City payroll records were introduced as exhibits, but the City failed to show the circuit court or this court on appeal precisely how the alleged overpayments were made. Accordingly, we affirm the circuit court's decision denying the City's counterclaim.

## IV. STATUTE OF LIMITATIONS

■ The final issue concerns the appropriate statute of limitations, and precisely whether it should be three years as the circuit court found or five years as the appellees urge. The circuit court hinged its decision on the following code section:

> The following actions shall be commenced within three (3) years after the cause of action accrues:
>
> (1) All actions founded upon any contract, obligation, or liability not under seal and not in writing, excepting such as are brought upon the judgment or decree of some court of record of the United States or of this or some other state;

Ark. Code Ann. § 16-56-105(1) (1987). The obligation sued on by the appellees was not under seal and not in writing. Rather it was the City's obligation to its employees as fixed by statute. These circumstances fit within thbe described actions under section 16-56-105. *See Baugh* v. *Prairie County*, 66 Ark. 306 (1899) (county debt to treasurer was subject to three-year statute of limitations). The circuit court did not err on this point.

Affirmed in part; reversed in part.