RICH MOUNTAIN ELECTRIC COOPERATIVE, Inc. *v.*
Jerry REVELS, Richard Leach, and Mary High

92-422                                          841 S.W.2d 151

Supreme Court of Arkansas
Opinion delivered November 9, 1992

*Friday, Eldredge and Clark*, by: *Barry E. Coplin*, for appellant.

*Dowd, Harrelson, Moore & Giles*, by: *Greg Giles*, for appellees.

JACK HOLT, JR., Chief Justice. The appellees, Jerry Revels, Richard Leach and Mary High, are poultry growers in Howard County, Arkansas. After a nonjury trial the judge found the appellant, Rich Mountain Cooperative, Inc., fifty-one percent negligent in not correcting a power outage that resulted in the deaths of over 9,000 chickens owned by the appellees. The appellees were found forty-nine percent negligent because they failed to have adequate back-up generators. On appeal, Rich Mountain Electric argues that the trial court erred in considering certain photographs and that there was not substantial evidence to support the judgment. We agree that the court should not have admitted the photos into evidence as they are irrelevant. However, we find that the trial court's finding of substantial evidence to support a judgment was not clearly erroneous.

This situation arose out of the following scenario. Because of a severe storm the previous afternoon, there were power outages on the electric distribution line servicing the appellees' chicken houses. Apparently, the storm caused a tree to blow down into a phase wire causing it to sag within inches of the neutral wire (normally they are four feet apart). The following day's one hundred degree temperatures and high electricity usage made the line sag even more and become heavily loaded. Once the line sagged into the neutral stage, the circuit breaker would go out at the substation, and outages would occur.

Due to the power outages and appellees' lack of adequate back-up generators, the appellees did not have electricity to run the cooling equipment in their chicken houses. As a result of the ensuing heat, Mr. Revels lost approximately 6,300 chickens; Mr. Leach lost about 900 chickens; and Ms. High lost about 2,100 chickens.

There was testimony at trial that the power line problem had been discovered on the day before the outage and that the outage occurred when a pine tree fell into the power line. In support of this argument, the plaintiffs tendered several photographs of trees grown up in close proximity to power lines. The photos were taken over a year after the power outage and did not depict the same site as the power outage at issue. Over Rich Mountain Electric's objection, the trial judge admitted the photographs into evidence.

## SUFFICIENCY OF THE EVIDENCE

In finding that there was substantial evidence, the court stated:

> [T]here is evidence that Defendant was negligent in that they could have more diligently pursued the cause of the outage. And, also, I believe these photographs are representative of the area and show that there's a general lack of maintenance on the easement right of way. Primarily I think they should have been more diligent. Maybe they were short-handed and had to run to other jobs is the reason they couldn't track down the tree across the line. And the plaintiffs are also somewhat negligent. I think anybody that's dependent upon electricity knows there are outages, especially if your livelihood depends on chickens. I think — even though Tyson's may not require you to have back-up generators, I think it's a general rule everybody knows you ought to. The court finds that the defendant is 51 percent negligent and the plaintiffs are 49 percent negligent. They're entitled to their damages less 49 percent of their own negligence, which, I think, it was undisputed what those damages were.

When a case is tried by a circuit court sitting without a jury, our inquiry on appeal is:

> [N]ot whether there is substantial evidence to support the factual findings of the court, but whether the findings are clearly erroneous (clearly against the preponderance of the evidence). In reviewing a finding of fact by a trial court, we consider the evidence and all reasonable inferences in a light most favorable to the appellee.

*City of Pocahontas* v. *Huddleston*, 309 Ark. 353, 831 S.W.2d 138 (1992) (citations omitted).

The court's findings that defendant should have been more diligent were not clearly erroneous. Evidence presented at trial indicated that Rich Mountain Electric was aware of the downed line on the day prior to the power outage and that the company was not actively diligent in discovering the cause of the outage on the day of the incident and making repair.

■ An electric utility company has a duty to inspect and maintain its power lines in safe and working order. *Stacks* v. *Arkansas Power & Light Co.*, 299 Ark. 136, 771 S.W.2d 754 (1989). However:

> Negligence of the company can not be inferred merely from the occurrence of the accident. That must be proved, and the burden of establishing it is on the party who alleges it.

> It is recognized generally as well as by the courts that electric utility companies, such as appellant, must meet the public demand for a ready and adequate supply of power. In doing so they are not insurers against accident or injury, and are not held liable for such as can not be reasonably foreseen.

*Arkansas Power & Light Co.* v. *Lum*, 222 Ark. 678, 262 S.W.2d 920 (1953).

■ Electric companies must exercise ordinary care in the construction of their services lines, to make inspections at reasonable times to see that equipment is kept in a reasonably safe condition and to diligently discover and repair defects. *Arkansas Power & Light Co.* v. *Johnson*, 260 Ark. 237, 538 S.W.2d 541 (1976). They must use commensurate care to keep all electrical apparatus in a proper state of repair. *Arkansas Power & Light Co.* v. *Cates*, 180 Ark. 1003, 24 S.W.2d 846 (1930). "The obligation of repairing does not mean merely that the company is required to remedy defective conditions as are brought to its actual knowledge. The company is required to use active diligence to discover defects in its system." *Stacks* v. *Arkansas Power & Light Co.*, 299 Ark. 136, 771 S.W.2d 754 (1989), (citing *Arkansas Gen. Utils. Co.* v. *Shipman*, 188 Ark. 580, 76

S.W.2d 178 (1934)).

The evidence indicated that the electric company did not use active diligence to discover and correct the problem. Mr. Revels testified that Johnny Braswell, foreman for Rich Mountain Electric, told him that the power line problem was discovered on Monday. When Mr. Braswell testified, he denied having told the appellee that the sagging line had been discovered on Monday. However, Mr. Braswell admitted that a power company crew has a responsibility to resag a power line once this situation is discovered.

Although the evidence of the power company's negligence in failing to resag the line the day prior to the outage rests in part on Mr. Revel's testimony, as opposed to Mr. Braswell's testimony, we must defer to the trial judge's discretion in weighing the witnesses' credibility. *State v. Massery*, 302 Ark. 407, 790 S.W.2d 175 (1990).

Mr. Braswell testified as to the stages taken to correct the outage on the day it occurred. According to his testimony, he received a call shortly before noon that the power on the appellees' line was out. He sent the lineman to the substation and Mr. Braswell patrolled the line between the substation and the first breaker. (The whole line is approximately eight to ten miles long from the substation to the end.) When the lineman got inside the substation, he reset the breaker. Once reset, the line held and the power stayed.

Approximately thirty minutes later, the line went off again. Mr. Braswell stated that he and the lineman repeated the same routine: the lineman reset the breaker, and Mr. Braswell patrolled another portion of the line. Once again, resetting the breaker brought the power back on.

At about 2:30 p.m., Braswell learned that the power on this same line was down again. Following the same procedure, he got power returned to the appellees without discovering the actual problem. Mr. Braswell testified that he then inspected the full line. In a wooded area just before the end of the line, he discovered the problem — the wires were out of sag. He found the wires, normally four feet apart, merely inches apart. He resagged the line and had the lineman reset the breaker. The electricity

returned to the line and remained on.

Braswell indicated that he did not discover the actual cause of the sagging lines until after Mr. Revels made his inquiry. Mr. Braswell then returned to the site and discovered that a tree had blown over, probably causing the problem.

In sum, Mr. Braswell patrolled various sections of the line on three separate occasions; yet, he did not find the problem until he inspected the entire line, after the power had repeatedly failed. As stated in *Stacks, supra,* "The company is required to use active diligence to discover defects in its system." The evidence of record corresponds with the court's finding that Rich Mountain Electric had not been actively diligent in pursuing the outage. After reviewing this evidence in the light most favorable to the appellees, Mr. Revels, Ms. High and Mr. Leach, we find that the evidence is not clearly against the preponderance.

## RELEVANCY OF PHOTOGRAPHS

The relevancy of evidence is within the trial court's discretion, subject to reversal only if an abuse of discretion is demonstrated. *Bradford v. State,* 306 Ark. 590, 815 S.W.2d 947 (1991); *Turner v. Lamitina,* 297 Ark. 361, 761 S.W.2d 929 (1988); *Ryker v. Fisher,* 291 Ark. 177, 722 S.W.2d 864 (1987). The test for determining whether photographs are admissible into evidence depends upon the fairness and correctness of the portrayal of the subject. *Ryker,* supra.

A.R.E. Rule 401 defines relevant evidence as evidence having any tendency to make the existence of the fact that is of consequence to the determination of the action more probable or less probable than it would be without that evidence. Although the definition of relevant evidence is broad, in order to be relevant, the evidence must be probative of the proposition toward which it is directed.

The photos depicted trees growing near power lines a year after the incident in question and in a different site. Further, they did not depict trees that were blown into power lines after a storm, as was the case in the power outage at issue.

The photos admitted into evidence did not fairly and correctly depict the situation at issue. They were not probative of

the issue of whether the power company failed to clean up a situation after a storm, and for this reason, the trial court erred in accepting the pictures into evidence.

Although we find error on the part of the trial court, this error does not justify reversal. "[A] nonjury case should not be reversed because of admission of incompetent evidence, unless all of the competent evidence is insufficient to support the judgment or unless it appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made." *Butler* v. *Dowdy*, 304 Ark. 481, 803 S.W.2d 534 (1991).

Even though the photographs were inadmissible, the trial court based its ruling on Rich Mountain Electric's failure to diligently pursue the cause of the outage, rather than on the photographs; for as the court stated, "[T]here is evidence that Defendant was negligent in that they could have more diligently pursued the cause of the outage."

Accordingly, we find that the admission of the photographs was harmless error and that the trial court should be affirmed.

Affirmed.