The Honorable Doug Wood State Representative P.O. Box 7078 Sherwood, AR 72116
Dear Representative Wood:
This is in response to your request for an opinion on the following questions:
 1. Is it mandatory that detention officers hired or employed by a county jail facility be certified law enforcement officers? And, does it make any difference whether they are armed or unarmed?
 2. Is the county responsible or liable for the negligence or wrongful actions of any certified law enforcement detention officer or deputy sheriff when they are off duty and working as certified law enforcement officers for private employers, for example, mall security, theatre security, private investigators?
In response to your first question, assuming that by "detention officer" you mean a jailer or a guard (see A.C.A. §§ 12-41-502
(1987) and 12-41-507 (1987)), it is my opinion that the answer to both parts of this question is "no." The certification of law enforcement officers is governed by A.C.A. §§ 12-9-101 through12-9-404 (1987 and Cum. Supp. 1991). Section 12-9-102(1) (Cum. Supp. 1991) defines "law enforcement officer" as "any appointed law enforcement officer who is responsible for the prevention and detection of crime and the enforcement of the criminal, traffic, or highway laws of this state. . . ." A jailer does not fall within this definition of "law enforcement officer" (see City ofPocahontas v. Huddleston, 309 Ark. 353, 831 S.W.2d 138 (1992) and Op. Att'y Gen. 89-015), and thus is not covered by the above certification provisions.
It should be noted, however, that the county detention officers (jailers) must successfully complete training equivalent to the basic jail course which is offered by the Arkansas Law Enforcement Training Academy or the Department of Correction within one year of being hired. See Criminal Detention Facility Review Commission Jail Standards Section 4-1002. The jailers may also, at the county's option, obtain additional training and may be certified by the Commission on Law Enforcement Standards and Training as "specialized law enforcement officers." I suggest that the Commission be contacted for further information regarding this training and certification process. It should be noted, however, that this certification is not mandatory, nor is it the equivalent of certification as a "law enforcement officer" under A.C.A. §§ 12-9-101 et seq.
With regard to your second question, it must be initially noted that the county is immune from tort liability for the negligent acts of its agents and employees. A.C.A. § 21-9-301 (Cum. Supp. 1991). Thus, no tort action will lie against the county for such acts. A county does not, however, share in the state's immunity from § 1983 (42 U.S.C. § 1983) civil rights actions. SeeMosier v. Robinson, 722 F.Supp. 555 (W.D. Ark. 1989). Thus, the possibility of a § 1983 cause of action must be considered in response to your question regarding "wrongful actions" of a county detention officer or deputy sheriff while working off-duty.
Section 1983 provides for the recovery of damages and injunctive relief against individuals and governmental bodies who deprive a plaintiff of rights, privileges or immunities secured by the Constitution and laws of the United States. To state a claim under § 1983, one must allege a violation of such a right, and must show that the alleged deprivation was committed by a person acting under color of law. Parrott v. Taylor, 451 U.S. 527, 535
(1981), rev'd. on other grounds, Daniels v. Williams,474 U.S. 327 (1986). Action taken "under color of law" has been defined as the exercise of power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." United States v. Classic, 313 U.S. 299, 326
(1941).
With regard to off-duty employment, it has been stated that "whether or not a police officer is off-duty does not resolve the question of whether he or she acted under color of law." Laynev. Sampley, 627 F.2d 12, 13 (6th Cir. 1980). The inquiry will focus, instead, upon whether the acts complained of were carried out by a public employee acting in his official capacity or while he was exercising his responsibilities pursuant to state law.See West v. Atkins, 487 U.S. 42, 49-50 (1988); Lugar v.Edmondson Oil Co., 457 U.S. 922, 949-50 (1982). At least one federal court has noted that cases involving allegedly actionable conduct carried out "off-duty" can be difficult to resolve.Lopez Navarro v. Otero de Ramos, 797 F.Supp. 87, 90 (D. Puerto Rico 1992). Clearly, acts of officers "in the ambit of their personal pursuits" are not cognizable under § 1983. Screws v.United States, 325 U.S. 91, 111 (1945). See also Watkins v.Oaklawn Jockey Club, 183 F.2d 440, 442-43 (8th Cir. 1950) (sheriff and deputy who were employed by a private racetrack were held not to have acted under color of law when they acted in their capacity as racetrack employees in ejecting a patron). A fact question may, however, depending upon the particular circumstances, be raised concerning whether the actions related in some way to the performance of an official duty. See Gibsonv. City of Chicago, 910 F.2d 1510, 1517 (7th Cir. 1990) andLayne v. Sampley, supra (suggesting that the issue of whether a person acted under color of law may present a jury question if there remain "`unanswered questions of fact regarding the proper characterization of the actions'" (quoting Rowe v. Tennessee,609 F.2d 259, 265 (6th Cir. 1979)).
The 8th Circuit in Watkins, supra, was apparently persuaded that the officers in that case did nothing inconsistent with what any agent of the racetrack would have done when carrying out orders to eject a person from the premises. 183 F.2d at 443. The court suggested, however, that a different question may have been presented had the officers arrested the patron, taken him to jail, or used their guns in effecting the ejection. Id. It is thus apparent that the particular facts and circumstances must be considered in each instance in determining whether the "color of law" requirement is met. The inquiry will in all likelihood focus upon the nature of the acts performed (Stengel v. Belcher,522 F.2d 438 (6th Cir. 1975)), or whether the alleged acts were "committed in the performance of any actual or pretended duty."Bonsignore v. City of New York, 683 F.2d 635, 639 (2nd Cir. 1982)). See, e.g., Gibson v. City of Chicago, supra
(officer who had been placed on medical leave status and divested of authority was held not to have acted under color of law);Robinson v. Davis, 447 F.2d 753 (4th Cir. 1971) cert.denied, 405 U.S. 979 (1972) (part-time campus security officers who also were part-time police officers were held not to have acted under color of law in requesting students to appear at college administrative hearing where it was clear that the officers were acting in their capacity as campus security officers).
With regard, specifically, to the detention officer, consideration must also be given to the ambit of his or her official authority. The Lopez Navarro case, supra, involved a prison guard who allegedly acted under color of law when he used his service revolver to shoot his victim in a residential neighborhood while off-duty. The court stated:
 The argument for finding that acts were not carried out under color of law would appear to be even stronger where, as in this case, the actor is a penal guard, since the ambit of his state-created authority would not appear to extend in any meaningful way beyond the confines of a state penal institution.
797 F.Supp. at 90.
Reference should also be made to any local ordinances governing the officers' duty hours. The complaint in Revene v. CharlesCounty Comm'rs, 882 F.2d 870 (4th Cir. 1989) was held to have stated a claim that the defendant deputy sheriff acted under color of law, even though he was off-duty at the time of the shooting, where a local ordinance provided that officers were on duty twenty-four hours a day.
It is apparent from the foregoing that your second question regarding "wrongful actions" cannot be answered with a simple "yes" or "no." Assuming that there was a deprivation of a constitutional right, it is possible that a § 1983 action will lie, depending upon whether the officer was acting "under color of law." This will involve a factual inquiry in each instance.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh