The Honorable Wanda Northcutt State Representative P.O. Box 350 Stuttgart, AR 72160-0350
Dear Representative Northcutt:
This is in response to your request for an opinion regarding benefits provided to certain personnel of the City of Stuttgart Police Department. The City, in correspondence attached to your request, states that it is requesting an opinion concerning "[w]hat determines Uniformed Employees" and "[w]hat determines Non Uniformed Employees." The City then sets out the relevant facts with respect to the four "Radio Operator/Matron" positions in question, focusing primarily upon the different benefits for these positions.
According to the facts outlined in the City's correspondence, two of the Radio Operators/Matrons were hired under the local police pension fund and were given the same benefits as city police officers. The next two were hired as nonuniformed employees and were included in the Arkansas Public Employees Retirement System (APERS). These employees were given the same benefits as other non uniformed city personnel. This different treatment is, it seems, the focus of the City's question concerning uniformed and nonuniformed employees.
It must be initially noted that the terms "uniformed" and "nonuniformed" municipal employees ordinarily have relevance in the civil service context. See, e.g., A.C.A. 14-50-101
(1987) (authorizing cities of the first class with populations between 20,000 and 75,000 to "establish or continue a civil service system for the nonuniformed employees. . . .") There is a provision for a "paid non-uniformed employees" pension and relief fund under A.C.A. 24-12-101 et seq. (1987 and Supp. 1993). But it appears that this only applies to the mayor, city attorney, city treasurer, city clerk, or municipal judge. See A.C.A. 24-12-101 (1987). The terms "uniformed" and "nonuniformed" employees do not appear in the Arkansas Code provisions addressing the benefits that are apparently at issue in this instance. The distinction between these two terms is therefore not dispositive for purposes of determining which benefits the Radio Operators/Matrons are entitled to.
It appears that the inquiry must focus instead on the specific Arkansas Code sections governing these particular benefits. First, with regard to local police pension funds (Chapter 11 of Title 24 of the Arkansas Code of 1987 Annotated), it is my opinion that the legislature intended for these funds to be established for the benefit of police officers. Cf. Looper v. Gordon, 201 Ark. 841, 147 S.W.2d 24 (1941) (pension fund applies to members of the police force). This conclusion is compelled by a review of the relevant body of law as a whole. It is particularly significant to note that in determining whether to implement a local police pension plan, the voters are asked to decide whether they are for or against a "Police Officers' Pension." See A.C.A. 24-11-402 and -404 (regarding the question on the ballot.) The legislation clearly states, moreover, that if approved, the tax is to be levied "for the purpose of paying police officers' retirement salaries and pensions. . . ." A.C.A. 24-11-404.
It seems clear that the Radio Operators/Matrons in this instance are not police officers. It is stated that they do not have arrest powers or carry weapons. I assume that they do not attend the state Law Enforcement Academy for police training. It is therefore my opinion that they should not be included in the local police pension fund.
With regard to sick leave and holiday compensation, the case of City of Pocahontas v. Huddleston, 309 Ark. 353, 831 S.W.2d 138
(1992) appears to be dispositive of the issue. This case involved the construction of A.C.A. 14-52-105, which provides for holiday compensation for "[a]ll law enforcement officers . . . employed by cities of the first or second class or incorporated towns." The court rejected the contention that this provision extends to radio dispatchers/jailers who, according to testimony in the case, did not attend the state Law Enforcement Academy for police training, and who "were not responsible for the investigation, prevention, or detection of crime and did not `write' any criminal or traffic violations." 309 Ark. at 358. The court specifically rejected the argument that wearing uniforms and badges was sufficient to qualify them as law enforcement officers. Id.
With respect to the Radio Operators/Matrons in question, the fact that they do not have arrest powers or carry weapons leads me to assume that they are similar to the employees in question in Huddleston, supra. It must therefore be concluded that they would, similarly, fail to qualify as "law enforcement officers" entitled to holiday compensation under A.C.A. 14-52-105.
It necessarily follows that state law governing sick leave for "all law enforcement officers . . . employed by cities of the first and second class or incorporated towns . . ." does not extend to these employees. A.C.A. 14-52-107(a). This language is identical to that in question in Huddleston regarding holiday pay.
Finally, concerning annual vacation, the applicable state law is found at A.C.A. 14-52-106 (see also A.C.A. 24-11-429), which provides as follows:
 The head or chief of each police department shall arrange that each employee shall be granted an annual vacation of not less than fifteen (15) working days with full pay.
While this Code section might at first glance appear to cover all employees of the police department, when placed in context, it clearly extends only to police officers. This provision was enacted as an amendment to the state law governing local policemen's pension and relief funds. See Act 415 of 1957, amending Act 250 of 1937, 2. As noted above, it seems clear that the legislature intended for local police pension funds to be established for the benefit of members of the police force, i.e., police officers. The title to a subsequent act amending Section 2 of Act 250 of 1937, as amended (the pension fund law), confirms this intent wherein it states that the purpose is "to Increase the Number of Vacation Days Earned by Police Officers." It is therefore my opinion that the legislature did not intend, by the use of the term "employee," to extend the annual vacation provision beyond the pension plan context, i.e., the term encompasses those employees who are members of the local pension fund. Thus, in my opinion, 14-52-106 does not apply to the Radio Operators/Matrons.
In conclusion, it appears that the key inquiry with regard to benefits under the state law governing local police pension funds and with regard to annual vacation as set by state law is whether the Radio Operators/Matrons are police officers. As to holiday pay and sick leave, the question is whether they are law enforcement officers. It is my opinion, based upon the foregoing, that these employees are neither police officers nor law enforcement officers for purposes of the benefits discussed above, as set by state law.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely, WINSTON BRYANT Attorney General
WB:cyh