DRITT *v.* MORRIS.

5-2669                                    357 S. W. 2d 13

Opinion delivered May 14, 1962.

*Dickson, Putman, Millwee & Davis,* for appellant.

*Rex W. Perkins* and *Pearson & Pearson,* for appellee.

CARLETON HARRIS, Chief Justice. On June 14, 1958, Mrs. Jessie P. Dritt, age 70, appellant herein, entered a Fayetteville grocery store, known as Campbell's Super Market, operated by A. D. Morris and Alfred D. Morris,

appellees herein, for the purpose of purchasing groceries. As she left the store, and started down the concrete incline leading from the premises, Mrs. Dritt slipped and fell, breaking her hip and sustaining other injuries. Suit was instituted by appellant against appellees, alleging that she was a customer and invitee of appellees, and that appellees had placed or caused to be placed on the floor of the store and on the surface immediately outside and inside the entrance, a "slippery, greasy substance known as floor sweep"; that the floor and surface were thereby made dangerous and unsafe; that her fall was occasioned by slipping upon the floor sweep, and such injuries were due to the negligence of appellees in placing and allowing to remain upon the floor and surface such slippery and greasy substance. The Morrises answered, denying the allegations, and further asserting that if Mrs. Dritt was injured, it was due to her own negligence and without negligence on their part. On trial, the jury returned a verdict for appellees, and from the judgment entered accordingly, appellant brings this appeal. Four points are relied upon for reversal, which we proceed to discuss, though not in the order listed in appellant's brief.

## I.

"The Lower Court Erred in Ruling as a Matter of Law That the Conduct of Appellees or Their Employees in Placing Floor Sweep on the Floor Inside Their Grocery Store Did Not Proximately Cause Appellant's Injuries. A Question of Fact Was Presented on This Issue, and It Should Have Been Submitted to the Jury for its Determination."

In its instruction No. 6, the court told the jury:

"You are further instructed that any allegation of negligence of floor sweep being on the defendants' floor inside of the building at the time and place of the fall complained of by the plaintiff as the proximate cause of the injury is not to be considered."

Appellant objected and saved exceptions to the giving of this instruction. After the giving of instructions (15 in number), the court asked: "Are there other instructions? I believe a juror had a question?" One of the jurors then stated:

"I didn't understand what you said about the floor sweep inside the building.

THE COURT: I will reread that.

MR. PUTMAN: We renew our objection to it if you reread it.

THE COURT: In other words, I will say this: There were two allegations of negligence; one in the complaint was that the floor sweep inside of the building was an act of negligence and the other allegation was that there was floor sweep outside of the building that she fell on which was an act of negligence. Now, I am telling you that it has been admitted in evidence that there was floor sweep inside of the building, but as far as an allegation of negligence on the part of the plaintiff, it is not to be considered. The allegation of negligence that floor sweep on the inside of the building at the time and place of the fall complained of was the proximate cause of the injury, that the evidence on proximate cause was not sufficient.

MR. PUTMAN: We object to the Court so instructing."

We are definitely of the opinion that the court erred in so instructing the jury. Mrs. Dritt testified that the floor on the north side of the establishment had floor sweep on it, distributed for sweeping; that she walked down this north side in making her shopping rounds, and had to walk through the floor sweep in order to find the items she desired to purchase. Mrs. Josephine Jennings, daughter of Mrs. Dritt, testified that when she took her mother's clothing home from the hospital, two days after the fall, floor sweep was still on Mrs. Dritt's shoes. Mr. Alfred Morris stated that customers did walk on and through the floor sweep in going about

the store. Morris identified a sample of "Certain Sweep" which was the brand used on the occasion of Mrs. Dritt's injury. Mr. Loren Heiple, head of the Civil Engineering Department, University of Arkansas, testified that a part of his training consisted of making analyses of compounds, and learning the effect of friction. He testified that he made an analysis of "Certain Sweep" (which had been purchased by appellant's attorneys from the same dealer supplying the appellees), and found it to consist of sand, oil, sawdust, and dye. The witness testified that he had performed tests with leather material and "Certain Sweep" on a concrete surface substantially the same as where appellant slipped and fell. Mr. Heiple stated that he walked through the floor sweep, on concrete, wearing leather soles and heels, and slipped. It was his opinion that the floor sweep on concrete made it at least twice as slippery. From his testimony:

"Two items would cause this slipperiness, one would be the roller-like effect of the sand particles, the other would be the oil base of the floor sweep compound which would tend to act as a lubricant. * * *

"The sand would serve as an intermediate surface apparently spherical in size, which would tend to act as a roller, that can act as a roller between two hard surfaces.

Q. Would that be lubricated by the oil?

A. It would be lubricated by the oil."

The witness also stated that he had used several different individuals in making tests.

Appellees insist that the court's ruling was correct, pointing out that the floor sweep used in conducting the experiments was not the same floor sweep, or out of the same container, as that on the floor at the time of Mrs. Dritt's fall. It is true that this was not a part of the same "batch" that had been used on June 14, 1958, but in answering interrogatories subsequent to the occurrence, appellee Alfred D. Morris stated that none of that particular sweep remained in his possession. Of course,

under those circumstances, it was impossible to conduct the experiments with sweep that had been on the floor on the occasion of the injury complained of. As herein stated, the same brand was used, and purchased from appellees' supplier—in fact, the above named appellee identified a sample of "Certain Sweep" which he had purchased from the supplier on the morning of the trial as "the same floor sweep" (referring to the brand), and stated, "It's the same thing we have always used."

Appellees also assert that Heiple's evidence was inadmissible because the experiments were not conducted under circumstances similar to those existing at the time of appellant's fall. It is not necessary that conditions be identical to those existing at the time of the occurrence in order to render experiments admissible; it is sufficient if there is a substantial similarity. Minor variations in the essential condition go to weight, rather than to the admissibility, of the evidence, and of course, much depends upon the purpose for which such evidence is introduced. See 20 Am. Jur., § 756, p. 628. It is there also stated: "Speaking generally, however, the measure of permissible variation of the conditions of the experiments from those of the occurrence is measured by whether such variation is liable to confuse or mislead the jury." We find nothing in the proffered evidence that could have tended to mislead or confuse the jury. We think the evidence was sufficient to present a question for jury determination on the issue raised by this point. It follows that the court's instruction was error, and such error calls for a reversal of the judgment. However, other alleged errors have been asserted, and in view of the fact that all questions presented may again arise upon a second trial, we briefly discuss each alleged error.

## II.

"The Trial Court Erred in Refusing to Order Appellee Alfred D. Morris to Answer More Fully Certain Interrogatories Propounded to Him."

Subsequent to the filing of the complaint, appellant propounded twenty-two consecutively numbered interrogatories to Alfred D. Morris, to be answered by him pursuant to the requirements of Act 335 of 1953, known as the Discovery Act (Chapter 3, Depositions and Discovery, Title 28).[1] Interrogatory No. 14 and the answer to same, are as follows:

"State whether or not any of your employees reported to you or your attorneys that they saw or knew or heard that the plaintiff fell as aforesaid. If yes, state the name and present address of said employee and state what said employee reported to you or your attorneys.

(Answer) (14) No report made to me. Have no information as to reports, if any, made to my attorneys." Interrogatory No. 15 and the answer thereto are as follows:

"State whether or not any other person reported to you or your attorneys that they saw or knew or heard that the plaintiff fell as aforesaid. If yes, state the name and present address of said employee[2] and state what said person or persons reported to you or your attorneys.

(Answer) (15) Several days after June 14, 1958, Alton Dewey Morris, 411 South School Street, Fayetteville, Arkansas, advised me that the daughter and son-in-law of plaintiff reported to him three days after June 14, 1958, that plaintiff had fallen. Have no information as to reports, if any, made to my attorneys."

Appellant moved to require Morris to answer these interrogatories more fully. The court found that no further answer was required, and the order reflects the following:

"For the sake of the record, the Court states that it finds that the purpose of said interrogatories is to lead to the discovery of eye witnesses to the fall of plaintiff, and that the information sought is a part of the at-

---

[1] The discussion under this point relates to Sections 28-355 and 28-356, Ark. Stats.

[2] This was evidently a typographical error and should read "person".

.torney's work product, and that the knowledge of the attorney of the defendant is not imputed to the defendant.''

We are of the opinion that the first portion of these interrogatories should have been answered, *i.e.*, appellant was entitled to the names and addresses of any employees who might have witnessed the fall, and the names and addresses of any other persons who witnessed same. The answer, ''Have no information as to reports, if any, made to my attorneys'', is insufficient. Though perhaps not true in this instance, to permit such an answer might well enable a litigant to intentionally evade questions propounded to him. As was stated in *Hickman* v. *Taylor*, 329 U. S. 495, ''A party clearly cannot refuse to answer interrogatories on the ground that the information sought is solely within the knowledge of his attorney.'' This is not to say that we will unequivocally follow the reasoning of the *Hickman* case in every respect, as several questions were presented in that litigation which have not, as yet, reached this Court, but we thoroughly approve the quoted statement. Practically the same identical point was before the Supreme Court of Delaware in the case of *Bullock* v. *Maag*, 94 A. 2d 382. The opinion reflects that the following interrogatory was propounded:

''Give the names and addresses of persons who have been interviewed or from whom statements have been procured, by you or on your behalf, in regard to the facts alleged in the complaint.''

It was answered as follows:

''I have not interviewed any persons nor have I procured statements from any persons in regard to the facts alleged in the complaint. I have no knowledge nor information as to the names and addresses of persons who may have been interviewed or from whom statements have been procured on my behalf by my attorneys.''

Likewise, a similar interrogatory:

"Give the names and addresses of the persons who have knowledge of the facts alleged in the complaint." This was answered:

"The defendant, Harry Maag, Ann Marie Bullock, my former wife; and other persons whose names and addresses are known to my attorneys but not to me." The propounding party moved the court to require the answering party to answer more fully, and the latter contended that he should not be required to furnish any of the desired information which was in the possession of his attorneys. The court rejected the contention with the following language:

"If the (answering party's) contention were accepted, the cloak of privilege would be spread widely enough to smother Rule 33. These interrogatories are within the scope of Rule 33 and the subject matter is not privileged. If the (answering party) does not have the information requested in Interrogatories Nos. 1 and 2, he will be obliged to obtain the date from his attorneys and to furnish it to the (propounding party). Obviously, a party may not be permitted to avoid answering interrogatories, otherwise unobjectionable, merely because the information sought is in the possession of his attorney."

Of course, there was nothing to prevent Morris from obtaining names and addresses of witnesses (if any) from his attorneys, and we hold that this portion of the interrogatories should have been more fully answered.

However, we take a different view when we reach that part, "State what said employee reported to you or your attorneys", and "State what said person or persons reported to you or your attorneys." This request had the same effect as asking for statements made by witnesses, and cannot be granted without a showing of necessity. See *Hickman* v. *Taylor, supra.* Of course, a situation may well arise where a party can show necessity, *i. e.,* a witness cannot be found, or the expense of obtaining the statement or deposition of a witness, perhaps hundreds of miles away, is prohibitive. Numerous

other valid reasons might well be advanced. However, in the case before us, there is no showing at all of necessity.

We have never had occasion to discuss this subject before, and we take this opportunity to make some general observations, since the question will arise before trial courts many times in the future. We think it would be vastly unfair to require an attorney, who perhaps has worked diligently in interviewing witnesses and obtaining statements, to turn his file of statements, his "work product", over to his adversary, who is then able to obtain the same amount of information with but a minimum of effort. Such a requirement could well have the effect of rewarding slothfulness, and would certainly tend to discourage initiative and promptness in preparing one's case. Counsel for each side might (as) well procrastinate while the other obtained statements. After all, in the average case, once counsel has obtained the names and addresses of possible witnesses (information to which he is entitled), there is nothing to prevent him from interviewing and taking the statements himself.

### III.

"The Trial Court Erred in Permitting Evidence of the Absence of Floor Sweep on Occasions Other Than the One in Issue."

Alfred Morris testified that he had seen floor sweep on the premises outside the store only once or twice, in 1952 or 1953, and that he had placed it there himself and swept it up. Harold Brannon, a former employee, testified he had never seen any floor sweep on the outside during the three or four months that he worked for appellees. This testimony was objected to by appellant. Appellees contend that the testimony was admissible as habit evidence, but the evidence in question went beyond merely showing the daily habit, routine, or method of cleaning. Appellees were entitled to present testimony as to the daily manner in which the floor was cleaned, and the compound disposed of, but the testimony that

no floor sweep had been observed on other occasions was immaterial to the question of whether there was sweep on the outside on this particular occasion. The fact that no floor sweep had been observed at prior times certainly did not establish that none was there on this occasion. Likewise, the evidence of these witnesses covered a long period of time, and we have held that evidence of conditions on remote occasions is not admissible to show conditions on the date in question. See *Little Rock & Ft. Smith Rwy. Co.* v. *Eubanks,* 48 Ark. 460, 3 S. W. 808. It follows that the court erred in admitting the testimony in question.

## IV.

"The Trial Court Erred in Permitting Appellees' Witness to Testify that He had Never Slipped and Fallen on Floor Sweep at Campbell's Super Market."

Brannon testified that he worked for appellees for several months during the summer of 1958, and his duties included sweeping the premises of the super market. He testified that in sweeping, he used and distributed floor sweeping compound, and he was asked if he had ever slipped and fallen on floor sweep. Over appellant's objections, the witness was permitted to testify that he had never slipped, nor fallen. We think the factual situation in this case precludes this evidence. Mrs. Dritt's complaint was predicated upon two different theories (or a combination of both). One was that her fall was caused by a pile of floor sweep outside the exit to the building; the other, was that in walking in the store, floor sweep accumulated on the heels and soles of her shoes, and upon walking down the incline (just outside the exit), the accident occurred because of the contact between the soles of her shoes (covered with the compound) and the concrete, creating the slipperiness mentioned by the expert, Heiple. If Mrs. Dritt had fallen *Inside* the store, Brannon's evidence would have been admissible, but she fell *outside,* and Brannon did not testify that he had walked on to the concrete incline

50

after walking through the floor sweep.[3] This, under the evidence, would seem to make a vast difference in the factual situation, for appellees' proof was directed to the fact that the *combination* of *floor sweep and the concrete incline* caused the fall.

In accordance with the reasoning herein set out, the judgment is reversed, and the cause remanded.

[3] For that matter, the evidence does not reflect the kind of shoes worn by Brannon while walking through the floor sweep, *i.e.*, whether they had leather soles.