Vera RYKER *v.* C.G. FISHER, Jr.

86-146                                                  722 S.W.2d 864

Supreme Court of Arkansas
Opinion delivered February 2, 1987

*Witt Law Firm, P.C.*, by: *Ernie Witt*, for appellant.

*Turner & Mainard*, by: *Lonnie C. Turner*, for appellee.

TOM GLAZE, Justice. Appellant and appellee have interests in adjoining tracts of land and share a common fence. Appellee was growing watermelons on his leased land, while appellant was raising cattle on her tract. In July 1984, cattle entered appellee's land, and destroyed his existing crop of watermelons. Appellee brought suit, alleging the appellant was negligent in "failing to keep up" her cattle. The jury found in appellee's favor and awarded him $7,000.00. For reversal of that verdict, appellant

contends on appeal that the trial court erred by (1) admitting photographs into evidence that were not properly authenticated, and (2) excluding evidence of subsequent harvests from the same crop which had been destroyed. We find no merit in appellant's contentions, and therefore, affirm.

■ Regarding appellant's first point, the appellee was requested to identify certain pictures. He responded they were photographs he asked his son to take of appellant's fences, but he was unsure if they depicted the south or west fence. Appellee further testified he was present when the photographs were taken, and only appellant's — and not his other neighbor's — fences were shown. We have held that the validity of photographs introduced into evidence was not objectionable merely because the witness did not take the pictures. *Hay v. Scott,* 276 Ark. 46, 631 S.W.2d 841 (1982). The test, we said, of whether photographs are admissible into evidence depends on the fairness and correctness of the portrayal of the subject and their admissibility addresses itself to the sound discretion of the trial judge. *Hay* at p. 50. As already noted, appellee identified the photographs as depicting appellant's fences at the time the cattle destroyed the crop. His only uncertainty was in distinguishing the photographs as they depicted either the west or south fences. Appellee's uncertainty did not render the exhibits inadmissible; instead, such uncertainty merely addressed itself to the discretion of the trial judge who determined whether the photographs were sufficiently accurate to be of value to the jury. *Southern National Ins. Co. v. Williams,* 224 Ark. 938, 277 S.W.2d 487 (1955). Considering the other evidence given in this case, we believe the trial judge was especially justified in admitting the photographs. Both appellant and appellee — aside from the photographs — presented extensive testimony concerning the state of appellee's watermelon crop and appellant's fences when the cattle destroyed the crop. Appellant has failed to show that the photographs in any way misled or prejudiced the jury. Therefore, we cannot agree the trial judge abused his discretion in admitting them.

Nor can we agree the trial judge erred in excluding evidence regarding appellee's subsequent harvests to the one destroyed by the cattle. This error, appellant argues, caused the jury to miscalculate the proper measure of damages. Nothing in the record substantiates appellant's argument on this point. In fact,

the record shows appellant received all she requested of the court, and instead, the appellee was the one denied the opportunity to develop the costs he incurred in planting and cultivating his crop.

On cross-examination, appellee stated that he had sold some watermelons in the fall after the cattle had damaged his crop. Appellee's attorney, in a side-bar conference, stated that if the appellant planned to elicit testimony about melons appellee sold, appellee wanted to introduce testimony about the cost of putting the crop in. After a discussion of the issue, the judge stated that he thought appellee should be able to show the cost he incurred in making the sales. Appellant's attorney replied "[t]hat's fair enough . . . [y]es, sir. I've got no problem with that." Appellant then proceeded to ask appellee about the number of "pullings" [harvests] he got from the crop. Appellee replied that he made three "pullings" in the fall and conceded that the cattle's destruction of his first crop did not prevent subsequent harvests. The issue was not raised again until re-direct examination, when appellee's attorney asked if appellee had sold enough melons to pay his expenses. Appellant objected, and the court, reversing its earlier position, sustained the objection, stating that appellant's attorney, on cross examination of appellee, had not gone into actual values received from appellee's later production. Throughout appellant's discussion of this issue with the trial court, appellant specifically stated that she wanted only to show how many loads of melons appellee had harvested — not what money he got.

In sum, the trial court agreed with appellant and appellant was allowed to thoroughly examine appellee concerning his destroyed first crop, as well as his subsequent harvests. She simply is in no position to complain regarding this issue on appeal.

Affirmed.