Linda McMICKLE,
Administratrix of the Estate of Calvin McMickle, Deceased *v.*
David GRIFFIN & David E. Taylor

06-672 254 S.W.3d 729

Supreme Court of Arkansas
Opinion delivered April 5, 2007

[Rehearing denied May 17, 2007.]

*Easley & Houseal, P.A.*, by: *B. Michael Easley*, for appellant.

*Butler, Hicky, Long & Harris*, by: *Fletcher Long, Jr., Phil Hicky*, and *Andrea Brock*, for appellees/cross-appellants.

Robert L. Brown, Justice. Appellant Linda McMickle, Administratix of the Estate of Calvin McMickle, appeals from an order of summary judgment in favor of appellee David Griffin and a judgment following a jury verdict in favor of defendants/appellees, David E. Taylor and David Griffin. On appeal, she raises multiple points. Because we agree with her on several of the points raised, we reverse and remand for a new trial.

The facts set out in McMickle's complaint are these. On November 9, 1999, at approximately 5:55 p.m., Calvin McMickel was killed when his Chevrolet Blazer crashed into the back of a John Deere 8400 farm tractor on Arkansas State Highway 44, approximately 5.4 miles south of Elaine. According to McMickle, Taylor was driving the farm tractor too slowly in the dark on a state highway without sufficient lighting to warn a following vehicle of the tractor's presence. She further alleged that Taylor had a plow attached to the rear of his tractor, which masked any light that might have been displayed.

McMickle added in her complaint that Taylor was an employee of David Griffin at the time of the collision and was acting within the course and scope of his authority as Griffin's agent and employee. She asserted that Taylor and other unknown agents of Griffin failed to remove the plow from the tractor so that its lights could be seen by a following driver. She further complained that Griffin failed to assure that the tractor he owned and made available to his employees used proper lighting; that he failed to train and instruct his employees not to move farm equipment on roadways at night; that he failed to train and instruct his employees regarding the legal requirements for safely and properly moving farm equipment at night; and that he failed to instruct his employees not to attach equipment which would conceal the tractor's lights.

McMickle later amended her complaint to add Tyler Farms as a defendant to the lawsuit but subsequently nonsuited her complaint against that entity. On October 30, 2002, Griffin then moved for summary judgment. In his motion, he alleged that there was no agency or employer/employee relationship between Taylor and him, and he concluded that there was no issue of material fact on this point. Attached to his motion for summary judgment was an affidavit in which he claimed to have no interest in Tyler Farms. He did admit that he leased land and equipment to Tyler Farms, but he stated that he was not an officer or employee of that entity; nor was he an officer or stock-holder of any of the corporations that make up Tyler Farms. Taylor also signed an affidavit claiming that Tyler Farms, and not Griffin, was his employer. Taylor's supervisor at Tyler Farms, Jerry Cravens, likewise signed an affidavit in support of Griffin's motion for summary judgment claiming that Griffin was not connected with Tyler Farms as an owner.

In her response to Griffin's motion for summary judgment, McMickle claimed that defense counsel was attempting to extri-cate Griffin from the lawsuit by using a scheme involving sixty-six dummy corporations which his corporate lawyers devised in 1993 to maximize government payments to him but that the scheme had

nothing to do with the day-to-day operations of his farms. She claimed that there was no question but that Griffin was a "material participant" in Tyler Farms and that the employees of Tyler Farms knew that their principal employer was Griffin. Through the conduit of Tyler Farms, Griffin was assured of receiving $2,640,000 in annual payments, she claimed.

Also in her response to the summary-judgment motion, McMickle argued that Taylor's testimony alone created a fact question. This was because while Taylor signed an affidavit saying that he did not work for Griffin, he swore in his previous deposition that he did work for Griffin. McMickle also claimed that other employees of Tyler Farms claimed that Griffin was their boss and that Griffin individually, and not as Tyler Farms, provided housing for them. As a final point, she argued that apart from allegations of Griffin's vicarious liability, he was also individually negligent in this case, as he was responsible for assuring that the tractor he owned and provided for use by his employees employed proper lighting as required by statute. The circuit court granted the motion for summary judgment as to Griffin, individually.

The case then went to trial. After a lengthy jury trial, the jury found for the defendants, Taylor and Griffin. The jury specifically answered special interrogatories and found that there was no negligence on the part of Calvin McMickle that was a proximate cause of any damages. The jury further found by its answers that, at the time of the accident, Taylor was acting as Griffin's agent or employee. The circuit court entered judgment in favor of Taylor and Griffin on October 17, 2005.

## I. Statutory Violations

For her first point on appeal, McMickle contends that the circuit court erred in refusing to instruct the jury to consider certain statutory violations as some evidence of negligence. Those statutory violations include a permit requirement, a lighting requirement, and a speed requirement.[1] This court has previously noted that "[a] party is entitled to a jury instruction when it is a correct statement of the law, and there is some basis in the evidence to support giving the instruction." *Byrne, Inc. v. Ivy*, 367

---

[1] Though not quoted directly from the relevant statutory provisions, McMickle's proffered instructions that are discussed in this appeal are based on the pertinent provisions of the statutes discussed herein — namely §§ 27-36-219, 27-36-204, 27-35-210, and 27-51-208.

Ark. 451, 463, 241 S.W.3d 229, 239 (2006). This court will reverse a trial court's refusal to give a proffered instruction only where there was an abuse of discretion. *See id.* This court reviews issues of statutory interpretation *de novo*, because it is for this court to determine the meaning of a statute. *See, e.g., Great Lakes Chemical Corp. v. Bruner*, 368 Ark. 74, 243 S.W.3d 285 (2006). Regarding our standard of review for statutory construction, we have said:

> The basic rule of statutory construction is to give effect to the intent of the legislature. *Ward v. Doss*, 361 Ark. 153, 205 S.W.3d 767 (2005); *Arkansas Tobacco Control Bd. v. Santa Fe Natural Tobacco Co., Inc.*, 360 Ark. 32, 199 S.W.3d 656 (2004). Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. *Id.* In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* We construe the statute so that no word is left void, superfluous or insignificant, and we give meaning and effect to every word in the statute, if possible. *Id.*

*Id.* at 82, 243 S.W.3d at 291.

*a. Permit Requirement*

McMickle first points to the circuit court's ruling with regard to the permit requirement for farm tractors. That relevant statute reads in part:

> (a) No vehicle operated upon the highways of this state shall have a total outside width, unladen or with load, in excess of one hundred two inches (102") excluding certain safety devices as designated by the state, unless a greater width is authorized by *special permit* issued by competent authority as provided in § 27-35-210.

Ark. Code Ann. § 27-35-206(a) (Repl. 2004) (emphasis added).

Two additional statutes are touched on by the parties in connection with the necessary permit. First, § 27-35-210, a codification of a 1955 statute, provides, in pertinent part:

> (a)(2)(A) It shall not be necessary to obtain a permit for nor shall it be unlawful to move any vehicle or machinery in excess of the maximum width prescribed in § 27-35-206 which is used for *normal farm purposes* only such as, but not limited to, hay harvesting equipment, plows, tractors, bulldozers, combines, etc., where:

(i) It is hauled on a vehicle licensed as a natural resources vehicle;

(ii) The vehicle or machinery is being transported by a farm machinery equipment dealer or repairman in making a delivery of new or used equipment or machinery to the farm of the purchaser; or

(iii) The vehicle or machinery is being used in making a pick up and delivery of the farm machinery or equipment from the farm to a shop of a farm equipment dealer or repair person for repairs and return to the farm; and

(iv) The movement is performed *during daylight hours* within a radius of fifty (50) miles of the point of origin thereof and no part of the movement is upon any highway designated and known as a part of the national system of interstate and defense highways or any fully controlled access highway facility.

Ark. Code Ann. § 27-35-210(a)(2)(A)(i) – (iv) (Repl. 2004) (emphasis added).

The parties also debate a statute in a different subchapter, which provides:

The provisions of this subchapter governing size, weight, and load shall not apply to fire apparatus, road machinery, or to implements of husbandry, including farm tractors, temporarily moved upon a highway, or to a vehicle operated under the terms of a special permit issued as provided in this subchapter.

Ark. Code Ann. § 27-35-102 (Repl. 2004).

McMickle argues that, to the extent § 27-35-102 contradicts the more limited exemption in § 27-35-210, the latter controls as the later-enacted statute. She cites further to an Attorney General Opinion which summarizes the law on the subject and supports her contention. Attorney General Opinions, of course, are not binding authority on this court.

On the issue of repeal of a statute by implication, this court has said:

A statute of a general nature does not repeal a more specific statute unless there is a plain, irreconcilable conflict between the two. *Winston v. Robinson*, 270 Ark. 996, 606 S.W.2d 757 (1980); *Patrick v. State*, 265 Ark. 334, 576 S.W.2d 191 (1979). Thus, the treatment of a general repealer clause does not differ from the rules applicable to a repeal by implication. The fundamental rule of that

doctrine is that a repeal by implication is not favored and is never allowed except when there is such an invincible repugnancy between the provisions that both cannot stand. *Donoho v. Donoho*, 318 Ark. 637, 887 S.W.2d 290 (1994); *Uilkie v. State*, 309 Ark. 48, 827 S.W.2d 131 (1992). Repeal by implication is not a favored device in our interpretation of statutes, and we must construe all statutes relating to the same subject matter together. *Waire, supra.* "*[A] repeal by implication is accomplished where the Legislature takes up the whole subject anew and covers the entire ground of the subject matter of a former statute and evidently intends it as a substitute, although there may be in the old law provisions not embraced in the new.*" *Uilkie, supra* (quoting *Berry v. Gordon*, 237 Ark. 547, 376 S.W.2d 279 (1964)); *see also Bryant v. English*, 311 Ark. 187, 843 S.W.2d 308 (1992) (constitutional provision). Hence, the older act will be "repealed" if it is apparent that the latter act was intended to substitute for the prior one. *Uilkie, supra.*

*Doe v. Baum*, 348 Ark. 259, 274–75, 72 S.W.3d 476, 484–85 (2002) (emphasis in the original).

■ We hold that this conflict between §§ 27-35-102 and 27-35-210 is irreconcilable and results in a repeal by implication of § 27-35-102 for purposes of farm tractors traveling on highways at night. That is because the General Assembly clearly took up the subject matter of permits for farm tractors anew in the more current statute.[2] We further hold that McMickle was entitled to an instruction based on § 27-35-210. We reverse and remand on this point.

### b. Lighting Requirement

The second statutory violation challenged on appeal regards lighting requirements for farm equipment under the code. McMickle proffered instructions that the jury consider the failure to comply with certain statutory lighting requirements as some evidence of negligence. Her instructions were based substantially on the following statute, which provides, in pertinent part:

(d)(1) Every farm tractor and every self-propelled unit of farm equipment or implement of husbandry equipped with an electric lighting system shall, at all times mentioned in § 27-36-204, be

---

[2] Section 27-35-210 was enacted by Act 98 of 1955, whereas § 27-35-102 was enacted by Act 300 of 1937.

equipped with two (2) single-beam or multiple-beam head lamps meeting the requirements of § 27-36-210 or § 27-36-212 and at least one (1) red lamp visible when lighted from a distance of not less than five hundred feet (500') to the rear.

. . . .

(e) Every combination of farm tractor and towed farm equipment or towed implement of husbandry equipped with an electric lighting system shall at all times mentioned in § 27-36-204 be equipped with lamps as follows:

. . . .

(2) The towed unit of farm equipment or implement of husbandry element of the combination shall be equipped with two (2) red lamps visible when lighted from a distance of not less than five hundred feet (500') to the rear or, as an alternative, two (2) red reflectors visible from all distances within six hundred feet (600') to one hundred feet (100') to the rear when directly in front of lawful upper beams of head lamps.

(3) These combinations shall also be equipped with a lamp displaying a white or amber light, or any shade of color between white and amber, visible when lighted from a distance of not less than five hundred feet (500') to the rear.

(f)(1) The lamps and reflectors required in this section shall be so positioned as to show from front and rear, as nearly as practicable, the extreme projection of the vehicle carrying them on the side of the roadway used in passing the vehicle.

(2) If a farm tractor, or a unit of farm equipment, whether self-propelled or towed, is equipped with two (2) or more lamps or reflectors visible from the front or two (2) or more lamps or reflectors visible from the rear, the lamps or reflectors shall be so positioned that the extreme projections both to the left and to the right of the vehicle shall be indicated as nearly as practicable.

Ark. Code Ann. § 27-36-219(e)(2) – (3) and (f)(1) – (2) (Repl. 2004).

McMickle contends that the circuit court refused to give her instruction based on the abovementioned statute because it concluded that a plow attached to a tractor by a three-point hitch is not a "towed unit of farm equipment or implement of husbandry" because the plow does not have wheels of its own. McMickle urges that, contrary to the circuit court's ruling, § 27-36-219 does not say that a unit is "towed" only, in her

words, when "rolling around on wheels." She cites to *Webster's Dictionary*, which she says defines "tow" as "to draw or pull along behind." *See Meriam Webster's Dictionary, available at* http://www.m-w.com/dictionary/tow. She further claims that to conclude equipment attached to the back of a tractor must have the statutorily required lighting only when the farm equipment has wheels defies common sense and yields an absurd result contrary to this court's decisions. *See, e.g., Nat'l Home Centers, Inc. v. First Arkansas Valley Bank,* 366 Ark. 522, 237 S.W.3d 60 (2006) (noting that this court will not interpret a statute to yield an absurd result that defies common sense).

McMickle further asserts that when the General Assembly enacted the lighting statute, it was concerned about the traveling public and about the ability of motorists like Calvin McMickle to see a hazardous situation. It was not concerned, she maintains again, with whether a piece of farm equipment has wheels. McMickle also notes that late in the jury's deliberations in the instant case, the jury sent a note to the circuit court that requested proper guidance on lighting, asking: "Is there a law about lighting on the plow?" McMickle claims, as a result, that the circuit court's failure to instruct the jury on the lighting requirements for the tractor and plow was devastating to her case.

Taylor and Griffin respond with several arguments. First, they argue that § 27-36-219 speaks only in terms of farm vehicles being *equipped* with certain lighting and not that the lamps actually be *lighted.* Second, they argue that under § 27-36-219(e), the phrase "equipped with an electric lighting system" does not modify "combination of farm tractor and towed farm equipment" due to the absence of a comma. Third, they contend that the plow in this case was attached to the tractor by a three-point hitch and not "towed" for purposes of § 27-36-219. Finally, they claim that subsections (e) and (f) of § 27-36-219 are abstract statements of the law and have no relationship to the facts of this case. Specifically, they contend that there is no evidence that Calvin McMickle attempted to avoid the tractor, which means the presence of reflectors on the left hand projections of the plow would be irrelevant.

█ This court has already acknowledged in this opinion that we review issues of statutory construction *de novo* and that we look to the plain language of a statute in determining legislative intent. *See Great Lakes Chemical Corp., supra.* We acknowledge that, in common parlance, "towed" generally suggests being pulled in

some form or fashion. In the instant case, however, the plow was attached to the tractor by a three-point hitch on a crossbar. Be that as it may, we read the clear mandate of § 27-36-219 to require that lights be visible *to the rear* of the tractor. Indeed, lights visible to the rear of the farm tractor, combination, or farm vehicle are mentioned no less than nine times in the statute. Legislative intent, accordingly, is clear and unmistakable that there be lighting on the rear of this farm equipment. To read this statute to say that an attached plow without lighting could block the tractor's lighting is a nonsensical and absurd interpretation and one that this court will not make. *See Nat'l Home Centers, Inc., supra.* We hold that § 27-36-219 requires lighting on a farm tractor visible from the rear of that tractor. The circuit court abused its discretion in not allowing the jury to be instructed on whether § 27-36-219 was violated and whether, if so, that violation constituted some evidence of negligence. We reverse and remand on this point.

### c. Speed Requirement

McMickle next maintains that the circuit court erred in refusing to give her proffered instruction regarding slow speed. The relevant statutory provision reads:

> (a) No person shall drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with the law.

Arkansas Code Annotated § 27-51-208(a) (Repl. 1994).

McMickle notes that the evidence showed that Taylor was driving forty miles per hour under the speed limit after dark when her husband crashed into the back of the plow. She further emphasizes that Taylor himself acknowledged that there were two alternate routes he could have taken to avoid driving on the highway. Thus, she asserts that the reduced speed was not necessary for the safe operation of the farm tractor or in compliance with the law.

For her case authority, McMickle relies on *Hooten v. DeJarnett*, 237 Ark. 792, 376 S.W.2d 272 (1964). In that case, this court held that the trial court did not err in giving appellee's instruction number 5A, which provided: " 'No person shall drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with law.' " *Hooten*, 237 Ark.

at 795, 376 S.W.2d at 274. That instruction was based on Arkansas Statutes Annotated 75-604(a) (Supp. 1963), entitled 'Minimum Speed Regulation,' which is now codified as § 27-51-208(a). The appellant, a tractor-driver in *Hooten*, urged this court that such an instruction was an abstract statement of the law or was not responsive to any evidence because the collision involved only one tractor and one automobile with no other vehicles being involved.

This court observed in *Hooten*, nonetheless, that the appellant testified that he was traveling approximately fourteen miles per hour and that the appellee testified that his speed was approximately fifty miles per hour at the time he first observed the appellant about twenty-five steps ahead of him. This court also observed that the appellant admitted that he was familiar with the road and knew it was heavily traveled, that the appellee testified that there was oncoming traffic at the time that made it impossible for him to pass the appellant, and that the appellant admitted that the appellee would have had to cross the center line to pass him. This court, as a final point, referred to the testimony of two witnesses who had almost driven into the rear of the appellant's tractor before the appellee's accident and to the fact that the shoulder was sixteen feet wide at the scene of the accident. Based on all these facts, we held in *Hooten* that the instruction given to the jury was proper.

Taylor and Griffin distinguish *Hooten* on its facts. They point out that in the instant case, one-half of the tractor was on the shoulder of the road at the time of the accident, where none of the tractor in *Hooten* was on the shoulder. They also note that in the instant case, there was no proof of oncoming traffic and no proof that Calvin McMickle attempted to go around the tractor or apply his brakes. Finally, they state that the shoulder in this case was only four feet wide. Because they contend that the instruction at issue does not bear on the issue of proximate causation and that the instruction in this case is an abstract statement of the law, they request that this court affirm the circuit court on this issue.

The *Hooten* case does have facts that are not present in the instant case. Nevertheless, as previously noted, a party is entitled to a jury instruction that is a correct statement of the law so long as there is some basis in the evidence to support giving the instruction. *See Byrne, Inc., supra.* The evidence presented was that Taylor was driving forty miles per hour under the speed limit at night. We conclude that under the facts of this case, there is some evidence that Taylor was driving at a slow speed in violation of the

statute and, thus, there is "some basis in the evidence to support giving the instruction" on slow speed. *Id.* at 463, 241 S.W.3d at 239. In short, whether Taylor violated § 27-51-208(a) is a jury question. Because McMickle was entitled to the instruction based on § 27-51-208(a), the circuit court abused its discretion in failing to instruct the jury on this law. We reverse the circuit court on this point.

## II. Summary Judgment for Griffin

For her second point on appeal, McMickle argues that the circuit court erred by concluding that Griffin breached no duty owed to Calvin McMickle as a matter of law and by granting summary judgment in his favor on the direct-negligence claim. McMickle explains that the summary judgment left only a *respondeat superior* claim against Griffin for trial based on the employer-employee relationship with Taylor and Taylor's negligence. She points out that she argued that Griffin was liable for failing to inspect and maintain properly the farm tractor used by Taylor and for failing to instruct Taylor on the safe operation of that machinery.

At the summary-judgment stage, McMickle argued that Griffin had a duty to instruct and supervise employees like Taylor. She also points out on appeal that Griffin testified that it was not uncommon for his equipment to be on the road at night. In addition, Griffin testified that there were no safety meetings or discussions regarding the movement of the tractor at night.

McMickle further contends that as the owner of the tractor, Griffin had a duty to ensure that it was not driven or moved on any highway in an unsafe condition. She states that Griffin leased the tractor and plow to Tyler Farms, a partnership that was set up by Griffin, with his employees acting as directors, in order to comply with federal regulations regarding farm grants. According to Mc-Mickle, despite this corporate structure, Griffin remained Taylor's principal.

She next points to Paragraph 5.2 of the lease between Griffin and Tyler Farms for the farm tractor involved in the wreck, which specifically required Griffin's approval for any modification to the tractor or plow. There was also evidence, she emphasizes, that the tractor wiring was significantly altered during the leasehold. Taylor testified, in addition, that certain lights on the tractor had been inoperable for six to eight weeks. In sum, according to McMickle, Griffin breached his duty to maintain his tractor and plow properly for purposes for which he knew they would be used.

For support, McMickle relies on *Brooks v. Ballentine Trucking, Inc.*, 241 Ark. 435, 408 S.W.2d 497 (1966), where she claims this court rejected the theory that a lessor was insulated from liability by a lease. She adduces *Brooks* for the proposition that a leasing company is entitled to a directed verdict *only when* there is no evidence of actual negligence on the part of the leasing company. Here, however, according to McMickle, there was evidence of negligence by Griffin at the summary-judgment stage in this case. She cites proof that Griffin purchased the plow without lights or properly mounted reflectors and the evidence, already mentioned, that he knew that the tractor and plow were going to be used at night. She concludes that construing all the evidence in her favor, there were genuine issues of material fact as to whether Griffin committed actual negligence in failing to instruct his employees and agents and in failing to maintain his equipment.

Taylor and Griffin argue the following undisputed facts in response: the tractor and plow were purchased new by Griffin in 1995 and delivered in new condition to Tyler Farms; the tractor and plow had been in the possession of Tyler Farms since that time pursuant to a lease agreement between Tyler Farms and Griffin; the lease agreement provided, among other things, that Tyler Farms was to keep and maintain the equipment at its sole cost and expense; Griffin did not make any changes to the tractor or plow at any time; Tyler Farms maintained the equipment from the date it was received new pursuant to the equipment lease. They claim, furthermore, that the issue of whether Griffin owed a duty to Calvin McMickle was a question of law and not one for the jury. Because the lease contract in this case placed the obligation to maintain the tractor and plow on Tyler Farms, they argue that there was no duty on Griffin's part in favor of the general public.

Our standard of review for summary judgment has been often stated:

> On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Jegley v. Picado*, 349 Ark. 600, 80 S.W.3d 332 (2002). The burden of sustaining the motion for summary judgment is always on the moving party and this court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Summary judgment is proper when the party opposing the motion fails to show that there is a genuine issue of material fact, and the

moving party is entitled to judgment as a matter of law. *Id.* Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Id.* (citing Ark. R. Civ. P. 56 (2002)).

*Jones v. Huckabee*, 369 Ark. 42, 46, 250 S.W.3d 241, 244 (2007).

The absence of any duty owed to McMickle based on Taylor's alleged status as an employee of Tyler Farms and not of Griffin is not as clear to this court as it was to the circuit court. Certainly, the jury found Taylor to be an employee or agent of Griffin. If Griffin was, in fact, Taylor's employer, Griffen owed a duty to protect third parties from his employee. *See, e.g., Regions Bank & Trust v. Stone County Skilled Nursing Facility, Inc.*, 345 Ark. 555, 49 S.W.3d 107 (2001) (recognizing an employer's duty of reasonable care to protect against the negligent supervision of his employees). Taylor's employee status is an issue that remains to be determined and was erroneously decided on summary judgment.

Moreover, McMickle's two separate bases for establishing direct liability against Griffin were, first, that Griffin had direct liability as the owner-lessor of the tractor because he provided the tractor with defective lights, knowing that the tractor would be operated on the roads at night, and, second, that Griffin was subject to direct liability because he negligently supervised his employee, Taylor. She points to the following portion of the lease agreement between Griffin and Tyler Farms:

> 5.2 Tyler Farms shall not alter, modify, or improve the Equipment without the prior consent of David Brooks Griffin. All repairs, replacements, and improvements to any item of Equipment of whatever kind, nature or description shall immediately become the property of David Brooks Griffin.

The fact question surrounding Griffin's involvement in any modifications made to the tractor and/or plow is clear from § 5.2.

■ We conclude that there are genuine issues of material fact surrounding Griffin's actual negligence, and we reverse the summary judgment.

### III. Photographs

McMickle next asserts that the circuit court abused its discretion in admitting 113 photographs into evidence that did not picture circumstances that were substantially similar to the circumstances surrounding Calvin McMickle's death. McMickle explains

that the photographs offered by the defendants were taken three years after the collision and that their staged recreation did not accurately reflect the conditions the night of the accident. According to McMickle, these photographs were irrelevant and, to the extent that they had any probative value, that value was substantially outweighed by the danger of unfair prejudice to McMickle. Because this issue and the other ensuing issues are likely to recur on retrial, we address them. *See Pennington v. Harvest Foods, Inc.*, 326 Ark. 704, 934 S.W.2d 485 (1996); *Bruns v. Bruns*, 290 Ark. 347, 719 S.W.2d 691 (1986).

There were two sets of photographs presented by Taylor and Griffin, totaling 113 in number. McMickle explains that the photographer based his reconstruction photographs on instructions from appellees' attorneys. She complains that nobody at trial testified that the photographs admitted into evidence fairly or accurately portrayed the scene at the time of the accident. She further maintains that neither set of photographs accurately depicted the circumstances at the time of the accident based on the testimony of eyewitnesses. McMickle cites this court's opinion in *Rich Mountain Electric Co-op, Inc. v. Revels*, 311 Ark. 1, 841 S.W.2d 151 (1992), as authority, where this court held that a trial court abused its discretion by admitting photographs taken a year after the accident in question.

In *Revels*, this court laid out our standard of review for the admission of post–accident photographs:

> The relevancy of evidence is within the trial court's discretion, subject to reversal only if an abuse of discretion is demonstrated. *Bradford v. State*, 306 Ark. 590, 815 S.W.2d 947 (1991); *Turner v. Lamitina*, 297 Ark. 361, 761 S.W.2d 929 (1988); *Ryker v. Fisher*, 291 Ark. 177, 722 S.W.2d 864 (1987). The test for determining whether photographs are admissible into evidence depends upon the fairness and correctness of the portrayal of the subject. *Ryker, supra.*

*Id.* at 7, 841 S.W.2d at 154. Relevant evidence is that evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ark. R. Evid. 401 (2007).

In *Revels*, this court noted that photographs of trees growing near power lines a year after the incident in question did not depict the site or the tree that was blown into the power lines which

caused the power outage at issue. Because of that, this court held that those photographs did not fairly and correctly depict the situation at issue and, thus, they were not probative of the issue of whether the power company failed to clean up a situation after a storm and restore power for the poultry growers. This court concluded that the trial court erred in accepting the pictures into evidence, but this court also held that the error did not justify reversal because the court had based its ruling on the failure to pursue the cause of the outage diligently, rather than on the photographs.

McMickle relies on *Carter v. Missouri Pacific Railroad Co.*, 284 Ark. 278, 681 S.W.2d 314 (1984), as a second case. In *Carter*, this court considered the trial court's admission of film submitted by the appellee railroad company that attempted to recreate the accident scene. The photographer admitted at trial that the sun was behind a dark cloud and could not be seen at the time of the photographs. This made the crossing lights appear bright against a dark background. This court stated that despite the fact that the undisputed evidence indicated that the film was taken at approximately the same time of day of the accident and in the same circumstances, the film showed the lights in operation under circumstances that were substantially dissimilar to those testified to by eyewitnesses. Because the most important issue before the jury — and the issue central to the appellant's claim of negligence — was why the appellant failed to see the lights at the crossing, we held that the unfair prejudice that arose as a result of the jury seeing the bright crossing lights in operation in later photographs far outweighed the usefulness to the jury to better understand the scene. We said:

> It is well settled that when a test or experiment is an attempt to reenact the original happening, the essential elements of the experiment must be substantially similar to those existing at the time of the accident. *Hubbard v. McDonough Power Equipment*, 83 Ill.App.3d 272, 38 Ill.Dec. 887, 404 N.E.2d 311 (1980); *Payne v. M. Greenberg Construction*, 130 Ariz. 338, 636 P.2d 116 (1981). We applied this same rule in *Dritt v. Morris*, 235 Ark. 40, 357 S.W.2d 13 (1962) where we held that although it was not necessary that conditions of an experiment be identical to those existing at the time of the occurrence, there must be a substantial similarity, and the variation must not be likely to confuse and mislead the jury.

> Other cases have held that if a film is misleading, it should be excluded. *See Wagner v. International Harvester*, 611 F.2d 224, 233

(8th Cir.1979); *Collins v. B.F. Goodrich Co.*, 558 F.2d 908, 910 (8th Cir.1977).

*Carter,* 284 Ark. at 281–82, 681 S.W.2d at 315–16 (quoting *Carr v. Suzuki Motor Co.,* 280 Ark. 1, 3–4, 655 S.W.2d 364, 365 (1983)).

In the case at hand, McMickle urges that the circuit court erred when it allowed all the pictures showing different lighting conditions and different tractor-lighting configurations into evidence *carte blanche*. She asserts that the conditions in all these different photographs cannot be substantially similar to the scene at the time of the collision. She adds that the pictures depicted the tractor lights in operation under circumstances that were substantially dissimilar to the circumstances described by the eyewitnesses. She further contends that the unfair prejudice that arose as a result of the jury's seeing two completely different sets of photographs, neither of which accurately represented the situation, far outweighed any usefulness to the jury to better understand the facts of the case. She claims that this court should reverse the trial court's decision to admit these photographs into evidence.

Taylor and Griffin answer that the testimony at trial was in conflict as to whether the accident took place at a time when lights on the tractor were or were not required to be on and operating. They note that there were witnesses who testified that the tractor in question had various combinations of lighting: that the tractor had no lights on the rear; that the tractor had one white light on the rear; that the tractor had four white lights and two amber flashers on the rear; that the tractor had two white lights and two flashers on the rear; and that only two flashers were seen. Further, McMickle's expert, Dr. Larry Williams, testified that the lights were not a sufficient warning to Calvin McMickle for him to be able to stop before the collision, that some of the lights might have been obscured, and that one would not be able to tell where the lights were located in relation to the highway.

State Trooper Adrian Ray, who investigated the incident, testified in contrast to Dr. Williams that the lights could be seen from a distance of 300 or 400 yards. Moreover, Taylor and Griffin emphasize that McMickle introduced photographs at trial reflecting what the tractor looked like from the rear with no lights and showed the jury a computerized synthesis, using these photographs to demonstrate a vehicle approaching the tractor in question from the rear with no lights on the tractor. Mindful of the conflicts in testimony and to rebut the photographs and computer imaging used by McMickle, Taylor's and Griffin's witness, Ken Patterson,

took 113 photographs that depicted the tractor on the highway where the accident occurred with all of the possible combinations of daylight and lights, including no lights at all. The pictures were taken at different distances and at different times of the day, with some taken at dark and some around dusk.

Taylor and Griffin also declare that given the conflict in testimony and the fact that McMickle only introduced pictures of the tractor with no lights on in the rear, the circuit court was well within its discretion in ruling that the appellees' photographs were relevant, subject to laying a proper foundation for their introduction. They assert that they laid a proper foundation for the pictures based on the following evidence: the highway in that area had not changed; the tractor and plow photographed were the actual equipment involved in the accident; the tractor and plow were both configured to accurately reflect what they looked like on the night of the accident; the tractor and plow were located on the highway in the same location as at the time of the collision; Ken Patterson testified that the photographs were fair representations of the scene and that they fairly depicted the tractor and plow; he took pictures at varying distances and at various light settings; there was nothing to distort the pictures in any way and the photos were an accurate portrayal of what the human eye could actually see.

Taylor and Griffin underscore that one of the major issues in this case was whether the tractor was visible by Calvin McMickle sufficiently in advance of the collision for him to have avoided the collision. According to them, their photographs were relevant to that determination, and they argue that without these pictures, the jury would have been shown only what the tractor looked like with no lights at all on the rear, as portrayed in the photographs and computer synthesis offered McMickle. They conclude that the photographs aided the jury in understanding the conflicting testimony.

The time of the accident and the daylight available, of course, is a matter of great dispute between the parties. Nevertheless, introduction of photographs must be tied to a specific witness's testimony about circumstances and time of day. Moreover, we are cognizant of the fact that the sheer number of the photographs introduced at trial may have the tendency to confuse and overwhelm a jury.

■ While we understand the circuit court's ruling that the 113 photographs were necessary to counteract McMickle's own photographic evidence, a proper foundation was required before

each photograph could be admitted into evidence. That means a foundation witness was necessary, testifying that each photograph was not only a fair representation of the scene of the accident but also was substantially similar to the circumstances at the time of the accident. Taylor, Jerry Cravens, and the co-workers in the field testified that the photographs in Exhibit 4 were too dark but that those in Exhibit 5 depicted the time of day of the accident. Only Taylor would have known that for certain, because the other witnesses testified to the conditions *at the field* when Taylor left on his tractor or conditions immediately after the accident. We are not holding that Taylor is the only appropriate witness for the photographs, but we are holding that a proper foundation must be laid in every instance regarding every photograph. We conclude that to the extent that a proper foundation was not laid for each photograph, this, too, constituted reversible error.

### IV. Wrongful-Death Statute

Next, we address the issue of whether the circuit court erred in ruling that the wrongful-death statute allowing recovery of loss-of-life damages does not apply retroactively. Specifically, the issue is whether the 2001 amendment to the wrongful-death statute to allow damages for loss of life is procedural or remedial legislation that can be applied retroactively. According to Mc-Mickle, Act 1516 of 2001, now codified at Arkansas Code Annotated § 16-62-101 (Repl. 2005), which added the loss-of-life provision, merely added an element of damages to the already existing cause of action and did not create any new substantive rights, or disturb vested rights, or create new obligations.

Taylor and Griffin claim, however, that Act 1516 of 2001 creates a new right in McMickle to claim damages for loss of life and creates a new obligation on their part to pay damages for loss of life. They emphasize that McMickle sought to offer proof as to loss-of-life damages in the amount of $3.1 Million Dollars.

The wrongful death statute referred to provides:

> (a)(1) For wrongs done to the person or property of another, an action may be maintained against a wrongdoer, and the action may be brought by the person injured or, after his or her death, by his or her executor or administrator against the wrongdoer or, after the death of the wrongdoer, against the executor or administrator of the wrongdoer, in the same manner and with like effect in all respects as actions founded on contracts.

(2) Nothing in subdivision (a)(1) of this section shall be so construed as to extend its provisions to actions of slander or libel.

(b) In addition to all other elements of damages provided by law, a decedent's estate may recover for the decedent's loss of life as an independent element of damages.

Ark. Code Ann. § 16-62-101 (Repl. 2005).

The language included in subsection (b) was added by Act 1516 of 2001. Regarding retroactive application, this court has said:

Our rule on this point could not be more clear. Retroactivity is a matter of legislative intent. Unless it expressly states otherwise, we presume the legislature intends for its laws to apply only prospectively.

. . . .

However, this rule does not ordinarily apply to procedural or remedial legislation. The strict rule of construction does not apply to remedial statutes which do not disturb vested rights, or create new obligations, but only supply a new or more appropriate remedy to enforce an existing right or obligation. Procedural legislation is more often given retroactive application. The cardinal principle for construing remedial legislation is for the courts to give appropriate regard to the spirit which promoted its enactment, the mischief sought to be abolished, and the remedy proposed. In addition, we have approved retroactive application of civil statutes, especially those concerning the fiscal affairs of government. For example, we held that the State can retroactively impose taxes. The United States Supreme Court has also said taxes can be retroactively applied.

*Bean v. Office of Child Support Enforcement*, 340 Ark. 286, 296-97, 9 S.W.3d 520, 526 (2000) (internal citations omitted).

This court has also said:

Although the distinction between remedial procedures and impairment of vested rights is often difficult to draw, *it has become firmly established that there is no vested right in any particular mode of procedure or remedy*. Statutes which do not create, enlarge, diminish, or destroy contractual or vested rights, but relate only to remedies or modes of procedure, are not within the general rule against retro-

spective operation. In other words, statutes effecting changes in civil procedure or remedy may have valid retrospective application, and remedial legislation may, without violating constitutional guarantees, be construed . . . to apply to suits on causes of action which arose prior to the effective date of the statute . . . A statute which merely provides a new remedy, enlarges an existing remedy, or substitutes a remedy is not unconstitutionally retrospective. . . .

*JurisDictionUSA, Inc. v. Loislaw.com, Inc.*, 357 Ark. 403, 412, 183 S.W.3d 560, 565-66 (2004) (emphasis added) (quoting *Padgett v. Haston*, 279 Ark. 367, 651 S.W.2d 460 (1983) (citing 16A Am. Jur. 2d § 675 (1979))).

 It is clear to this court that Act 1516 of 2001 added only a new remedy to an already existing right. Before Act 1516, a plaintiff already had the right to bring a wrongful-death action against a defendant. Act 1516 of 2001 simply gave the plaintiff a new measure of damages for such an action. We hold that Act 1516 of 2001 was meant to be applied retroactively. The ruling of the circuit court on this issue was also error.

### V. Agency

For her fifth and final point on appeal, McMickle contends that the circuit court erred by limiting her proof of agency. She complains, specifically, that the circuit court should have allowed her to introduce evidence to show the makeup of Tyler Farms, Griffin's relationship to Tyler Farms, and how Tyler Farms operated. She asserts that she should have been permitted to show, for one thing, that Tyler Farms, a partnership, was comprised of sixty-six separate corporate entities, all of which were formed in the names of Griffin's employees. She maintains that because she was not allowed to introduce this evidence, she was precluded from demonstrating the true character of the Tyler Farms operation to prove an agency or employment relationship between Griffin and Taylor.

This court has announced the following with respect to the question of agency:

When the evidence as to the nature and extent of an agent's authority is in conflict, it is a question of fact for the fact-finder. *Southland Mobile Home Corp. v. Chyrchel*, 255 Ark. 366, 500 S.W.2d 778 (1973). An agency can be established by circumstances, and any evidence tending to establish agency is admissible. *Id.*

*Found. Telecomms., Inc. v. Moe Studio, Inc.*, 341 Ark. 231, 239, 16 S.W.3d 531, 537 (2000).

We have also said that "courts will ignore the corporate form of a subsidiary where fairness demands it." *Woodyard v. Arkansas Diversified Insurance Co.*, 268 Ark. 94, 99, 594 S.W.2d 13, 17 (1980). This is usually done "where it is necessary to prevent wrongdoing and where the subsidiary is a mere tool of the parent." *Id.*

■ Because the evidence of the nature of Taylor's and Griffin's relationship was in conflict in this case, the court should have allowed any evidence tending to establish agency or employment to be admitted. It seems that any evidence tending to show that Griffin was actually in control of Tyler Farms and/or the sixty-six corporations that comprise Tyler Farms would certainly be relevant to the question of his relationship to Taylor. This question is disputed in this case, as there was conflicting testimony from Taylor, for example, as to whether he actually worked for Griffin at the time of the accident. By not allowing this evidence, the circuit court abused its discretion.

## VI. Cross-Appeal

On cross-appeal, Taylor and Griffin, as appellees/cross-appellants, assert that the circuit court erred in denying their motion for directed verdict on behalf of Griffin as there was no sufficient evidence of any employee/employer relationship between Taylor and Griffin. According to them, the proof at trial was clear that Taylor was not an employee or agent of Griffin, but, rather, that Taylor worked for Tyler Farms.

This court's standard of review for a challenge to a circuit court's denial of a motion for directed verdict is as follows:

> A directed verdict motion is a challenge to the sufficiency of the evidence, and when reviewing the denial of a motion for directed verdict, we determine whether the jury's verdict was supported by substantial evidence. *The Bank of Eureka Springs v. Evans*, 353 Ark. 438, 453, 109 S.W.3d 672, 681 (2003). We have defined substantial evidence as follows:
>
> > Substantial evidence is defined as evidence of sufficient force and character to compel a conclusion one way or the other with reasonable certainty and it must force the mind to pass beyond

mere suspicion or conjecture. *State Auto Property Cas. Ins. Co. v. Swaim*[,] 338 Ark. 49, 991 S.W.2d 555 (1999); *Barnes, Quinn, Flake & Anderson, Inc. v. Rankins*, 312 Ark. 240, 848 S.W.2d 924 (1993). When determining the sufficiency of the evidence, we review the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered, and we give that evidence the highest probative value. *Id.* A motion for directed verdict should be granted only when the evidence viewed is so insubstantial as to require the jury's verdict for the party to be set aside. *Conagra, Inc. v. Strother*, 340 Ark. 672, 13 S.W.3d 150 (2000). A motion for directed verdict should be denied when there is a conflict in the evidence, or when the evidence is such that a fair-minded people might reach different conclusions. *Wal-Mart Stores, Inc. v. Kelton*, 305 Ark. 173, 806 S.W.2d 373 (1991).

*D'Arbonne Const. Co., Inc. v. Foster*, 354 Ark. 304, 307-308, 123 S.W.3d 894, 897-98 (2003).

*Byrne, Inc.*, 367 Ark. at 455-56, 241 S.W.3d at 234.

■ We agree with McMickle that the following evidence, viewed in the light most favorable to her, substantially supported the circuit court's decision. McMickle first points to Taylor's deposition testimony that he worked for Griffin and that Griffin was his boss. He also said that he would follow Griffin's orders. She also refers to the testimony of Taylor's coworker, Ivory Lee Gilmore, Sr., who testified that he had worked for Griffin since 1977, as a farmer and driving tractors and other machinery. Gilmore testified that Jerry Cravens was his immediate supervisor and that Cravens reported to Griffin. Gilmore also testified that Griffin compensated him for driving tractors by providing him a house in which to live. Further, when the accident occurred, Griffin arrived on the scene after farm manager Gary Inman contacted him and told him that he needed to be there. Griffin himself testified that he visits the farm three to five times per week to meet with farm manager Inman. Griffin added that he controlled the planting of crops in order to maximize the value of each acre. Finally, Griffin testified that the lease arrangement between Tyler Farms and him was such that he received all the profits and Tyler Farms was not left with any money at the end of the year.

We affirm on the cross-appeal.

Reversed and remanded. Affirmed on cross appeal.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
### MAY 17, 2007

*Easely & Houseal, P.A.,* by: *B. Michael Easely,* for appellant/cross-appellee.

*Butler, Hicky, Long & Harris,* by: *Fletcher Long, Jr., Phil Hicky,* and *Andrea Brock,* for appellees/cross-appellants.

ROBERT L. BROWN, Justice. ■ Petitioners David Griffin and David E. Taylor, as well as The Agriculture Council of Arkansas, as amicus curiae, raise the issue of whether Ark. Code Ann. § 27-35-210(a) (Repl. 2004) repealed Ark. Code Ann. § 27-35-102 (Repl. 2004) by implication or whether the two statutes can be read harmoniously. We reiterate our original holding that a repeal by implication has occurred, and we deny rehearing.

■ Both the petitioners' and the *amicus's* briefs advance the argument that § 27-35-210(a)(2)(A) deals only with special permits for hauled cargoes. They maintain that the tractor at the time of the accident was not being hauled on a vehicle and, thus, this section does not apply. We disagree because that interpretation of the statute is too narrow.

As quoted in our original opinion, Ark. Code Ann. § 27-35-206(a) (Repl. 2004) provides that no vehicle shall be operated on state highways with a width in excess of 102 inches without a special permit as provided in § 27-35-210. This prohibition deals with width and is not limited to hauling cargo. Section 27-35-210(a)(2)(A) then sets out exceptions to that permit requirement, including movement on the highways during daylight hours. Section 27-35-210(a)(2)(A) also is not limited to situations where cargo is being hauled.

■ In the instant case, the issue to be decided was whether the tractor with the attached plow, which exceeded 102 inches in

width, was moved on the highway during daylight hours. If so, the tractor/plow did not need a special permit. That is the question for the jury to decide on retrial.

On a related matter, we disagree with the petitioners and *amicus curiae* that § 27-35-210(a)(2)(A) was not enacted later than § 27-35-102. Though a permit section was included in Act 300 of 1937, the language codified at § 27-35-210(a)(2)(A) was not enacted until Act 32 of 1971. Accordingly, an irrevocable conflict between the two statutes exists.

Petitioners raise as their third point for rehearing that with respect to the lighting requirement, the opinion erroneously stated that the jury had not been instructed on Ark. Code Ann. § 27-36-219 (Repl. 2004), when it had been instructed on § 27-36-219(d)(1). Section 27-36-219(d)(1) deals with the requirement of one red light on the rear of a tractor one-half hour after sunset. The issue at trial and on appeal, however, was whether lighting was required on the attached plow which allegedly blocked the tractor's lighting. We read § 27-36-219(e) and (f) as requiring that a farm tractor or unit of farm equipment, whether self-propelled or towed, have lamps or reflectors visible from the rear. Lamps or reflectors solely on the rear of a tractor may be blocked by an attached plow and, thus, may not be sufficiently visible to comply with this statute. This, again, is a question for the jury to decide.

Petition for rehearing denied.